Filed 02/23/26

| | | |
|---|---|---|
| **VERMONT SUPERIOR COURT**<br>Washington Unit<br>65 State Street<br>Montpelier VT  05602<br>802-828-2091<br>www.vermontjudiciary.org |  | CIVIL DIVISION<br>Case No. 25-CV-04605 |

| Stephen Whitaker v. City of Montpelier et al |
|---|

## ENTRY REGARDING MOTION

Title:          Partial Motion to Dismiss (Motion: 10)
Filer:          Michael John Tarrant, II
Filed Date:     January 26, 2026

This motion is granted.

Defendants, the City of Montpelier and its mayor, Mr. Jack McCullough, seek partial dismissal of Plaintiff Stephen Whitaker's second amended complaint.[1]  As amended, the complaint includes 5 counts.  In Counts 1 and 2, Mr. Whitaker asserts violations of the Open Meetings Law (OML), 1 V.S.A. § 310–314, and the Public Records Act (PRA), 1 V.S.A. § 315–320.  Defendants do not challenge Counts 1 and 2.  Counts 3 and 4 present numerous objections to City conduct or decision-making, but the allegations are not clearly or effectively organized to explain what legal claims Mr. Whitaker is asserting.  Count 5 is not an independent legal claim but a list of various declarations and injunctions that Mr. Whitaker seeks.  These are remedies and not claims.  Mr. Whitaker has sued Mr. McCullough in his individual capacity, seeking only criminal penalties against him for alleged knowing OML violations under 1 V.S.A. § 314(a).

Defendants seek to dismiss Mr. McCullough from the case entirely.  Otherwise, they seek to dismiss Counts 3 and 4 both for failure to state a claim and because Mr. Whitaker lacks standing to bring those claims.  They also seek to dismiss or strike whatever portion of Count 5 relates to Counts 3 and 4.

The first challenge is to identify the nature of the legal claims subject to Defendants' motion.  V.R.C.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").  The second amended complaint is 171 paragraphs of allegations before a several page long "prayer for relief."  See V.R.C.P. 8(e)(1) (stating that the allegations of the complaint "shall be simple, concise, and direct").

---

[1] The procedural posture of this case is unusual.  The Court granted the second motion to amend the complaint before it considered the timely filed opposition because Defendants made the filing after hours and the Court did not see it on the docket at the time of its decision.  Defendants then filed a motion to reconsider and a motion to dismiss to preserve their right to challenge the second amended complaint.  For procedural efficiency, the Court denied the motion to reconsider without prejudice to the substantive arguments in opposition to amendment.  See Order Regarding Pending Motions (Feb. 3, 2026).  Those arguments were incorporated into the motion to dismiss and are considered here.

Count 3 focuses on a contract the City entered into with White + Burke Real Estate Advisors, Inc., as listing agency, to market and sell the City's Country Club Road property. Mr. Whitaker objects to the following: (1) that the City did not follow its Charter or purchasing policy when it contracted with White + Burke because it did not put the contract out for bid, (2) it did not produce a written justification for a "sole source" contract when or before it entered into the contract, and (3) it similarly failed to disclose to the public in a timely manner a contingent-fee term of the contract, which he alleges creates a conflict of interest in violation of City policy and is prohibited by unidentified federal grant programs. Mr. Whitaker asserts that these issues warrant declaratory and injunctive relief voiding the contract. Mr. Whitaker identifies no statutory right to review or other ascertainable common law claim. As a result, the Court concludes that this is a claim for a writ of mandamus subject to Rule 75 procedures.

In Count 4, Mr. Whitaker alleges that the Country Club Road property, or some of it, "is an active Brownfield site enrolled with the Vermont Department of Environmental Conservation Sites Management Section, with documented exceedances of arsenic, lead, PAHs, and heptachlor epoxide." Second Amended Complaint ¶ 155. He alleges that the City has done work on the property without the correct plans and permissions from the Department of Environmental Conservation (DEC) in violation of the 10 V.S.A. ch. 159 and DEC's "I-Rule," Investigation and Remediation of Contaminated Properties Rule, available at https://dec.vermont.gov/sites/dec /files/wmp/Sites/02.2024.Final.corrected.IRule.pdf. He seeks a declaration and injunction prohibiting further such activity until all DEC-approved plans are in place and corrective action has been taken. Again, Mr. Whitaker identifies no statutory right to review or other reasonably ascertainable common law claim, and the Court similarly concludes that this too is a claim for a writ of mandamus subject to Rule 75 procedures.

1.      *Standing argument*

Defendants seek to dismiss Counts 3 and 4 and argue that Mr. Whitaker lacks standing because he has not sustained a direct harm from the allegations in those counts. Defendants do not, however, address municipal taxpayer standing. Municipal taxpayer standing extends to claims "that municipal assets have been improperly wasted" and does not require "that any direct loss has been caused to the plaintiff." Taylor v. Town of Cabot, 2017 VT 92, ¶¶ 9–10, 205 Vt. 586 (citations omitted). At least at the dismissal stage, Defendants' standing arguments cannot prevail because Mr. Whitaker is a taxpayer and many of the allegations can be construed as alleging waster of municipal funds. As a result, the court focuses on Defendants' Rule 12(b)(6) arguments in this decision.

2.      *Dismissal standard*

The Vermont Supreme Court has described the familiar standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. A motion to dismiss is generally disfavored, especially when the liability theory is novel or extreme. *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309 (quoting *Gilman v. Main Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554). Such cases should be examined based on evidence, not dismissed pre-trial solely due to novelty. *Id.* (quoting *Ass'n of Haystack Prop. Owners, Inc. v. Sprague*, 145 Vt. 443, 447 (1985)). When reviewing, the Court accepts all factual allegations as true and determine if no

2

facts alleged entitle the plaintiff to relief. *Id*. (quoting *Amiot v. Ames*, 166 Vt. 288, 291 (1997)). We also accept reasonable inferences and assume the opposing assertions are false. *Id*.

### 3. *Mayor McCullough as a party*

Mr. McCullough is in this case only in his individual capacity. He contends he should be dismissed from this case entirely under 24 V.S.A. § 901(a) and, separately, because Mr. Whitaker cannot bring a claim against him under 1 V.S.A. § 314(a). Both arguments are correct.

Section 901(a) of Title 24 provides that an action "given against" a municipal officer, which includes a mayor, "shall be brought against such town or town school district, as the case may be." See also 24 V.S.A. § 901a(b) (parallel provision as applied to municipal employees); 1 V.S.A. § 139 (statutory expression *town* encompasses *city*). There is no general exception to this under the OML or PRA. Counts 1 and 2 are properly asserted against the City, not its mayor.

Separately, the only reason Mr. McCullough is in the case at all is because Mr. Whitaker seeks to prosecute a criminal charge against him for violating 1 V.S.A. § 314(a), which establishes a criminal penalty for certain OML violations ("shall be guilty of a misdemeanor and shall be fined not more than $500.00"). However, Mr. Whitaker has not alleged that he is a state's attorney or attorney general with the power to initiate criminal proceedings, and he is in the wrong division to pursue such a claim in any event. Compare 4 V.S.A. § 32 with § 33 (jurisdiction of civil and criminal divisions).

If Mr. Whitaker intended to assert claims against Mr. McCullough more broadly than under 1 V.S.A. § 314(a), then 24 V.S.A. § 901(a) would apply to bar those claims, too.

The Court dismisses Mr. McCullough from this case.

### 4. *Mandamus standard*

A court will only issue a writ of mandamus under the following circumstances "(1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for review of the performance of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law." *Petition of Fairchild*, 159 Vt. 125, 130 (1992); see also *State v. Forte*, 159 Vt. 550, 555 (1993) (duty appropriate for mandamus must be "simple and definite") (citation omitted). A duty is ministerial only when "nothing is left to discretion." *Bargman v. Brewer*, 142 Vt. 367, 369 (1983) (citation omitted). In exceptional cases, mandamus may also lie to address an arbitrary abuse of discretion that amounts to a practical refusal to perform a clear legal duty. *Office of the Auditor of Accounts v. Office of the Attorney General*, 2025 VT 36, ¶ 50 (citations omitted).

In all events, mandamus must be predicated on a "clear and certain right to the action sought by the request for a writ." *Skiff v. South Burlington School District*, 2018 VT 117, ¶ 25, 208 Vt. 564, 575 (residents' mandamus claim against school district improperly founded on nonexistent constitutional right); *Wool v. Menard*, 2018 VT 23, ¶ 18, 207 Vt. 25, 34-35 (inmate's

3

mandamus claim about competitive bidding properly predicated on statutory right to telephone services at "lowest reasonable cost"); *Petition of Fairchild*, 159 Vt. at 130 (adjacent landowners' mandamus claim against Town properly predicated on right to enforce relevant judicial decision and Town zoning regulations).

     5.     *Analysis of Count 3*

Mr. Whitaker's Count 3 claim is predicated on the requirements of the City's charter[2] and its purchasing policy. He also cites generally 24 V.S.A. ch. 33 (Municipal Officers Generally, 24 V.S.A. §§ 801–1147), though he did not identify a relevant statute, and the Court did not readily identify any. He makes three arguments: (1) the City improperly made the White + Burke contract sole source and then did not follow City purchasing requirements, (2) the contingency fee agreement in the contract creates an impermissible conflict of interest, and (3) the contingent fee term of the White + Burke contract will cause the City to lose eligibility for certain federal grants.

The City argues and Mr. Whitaker does not contest, the only potentially relevant charter provision is § 320: "All contracts on behalf of and any purchases for the City shall be authorized by the City Council, except as otherwise provided by ordinances of the City of Montpelier or this charter." Chapter 2, Article III of the Montpelier ordinances[3] addresses "purchasing." The only relevant provision appears to be this: "The City Council shall develop and maintain a Purchasing Policy which includes the competitive bid process." Code § 2–308.

The policy[4] sets out standards for competitive bidding on municipal contracts. It then provides, as relevant here:

> **EXCEPTIONS**: The following exceptions may apply, however there must be written documentation created and maintained that outlines the process and rationale for such exceptions:
>
>        .   .   .
>
> **Sole Source Purchases**: If the City Council determines that there is only one source for a proposed purchase, it may waive the bid process and authorize the purchase from the sole source.

Handbook at 99.

The White + Burke contract is alleged by Plaintiff to be "sole source." To the extent that Mr. Whitaker takes the position that the contract had to be put out to bid, it did not; the City could choose to make it "sole source" under the Handbook and Charter provisions laid out above, and it evidently did.

---

[2] 24 app. V.S.A. ch. 5

[3] Montpelier ordinances are available here: https://library.municode.com/vt/montpelier/codes/code_of_ordinances.

[4] Available in the City Council Handbook found here: https://www.montpelier-vt.org/DocumentCenter/View/12002/City-Council-Handbook-2025.

Defendants argue that Count 3 should be dismissed because Mr. Whitaker implicitly inserts into the sole source contracting exception a requirement that the written documentation be created and produced prior to entering into the contract. To the extent that is Mr. Whitaker's argument, he fails to oppose the argument on the merits in the opposition. More importantly, the policy's text does not impose a timing requirement, much less a clear ministerial precondition to contract formation, enforceable through mandamus. To the extent this was not Mr. Whitaker's argument, he fails to articulate precisely how his argument differs from the City's characterization of it.

Mr. Whitaker asserts in his second-amended complaint that the City had a duty to publicly disclose an alleged contingent-fee term of the contract prior to agreeing to it. He does not cite any applicable requirement, much less a ministerial one. Again, the City has framed the argument in this manner, persuasively argued that there is no such legal claim available to Mr. Whitaker, and Mr. Whitaker has failed to clarify the basis for such a legal claim.

Next, the policy includes a code of conduct section addressing conflicts of interest, and Mr. Whitaker alleges that the contingent fee term violates it by giving the contractor, White + Burke, an improper incentive. However, those provisions apply exclusively to "[e]mployees, officers, and agents of municipality." Handbook at 97. Plaintiff does not allege that any covered municipal employee, officer, or agent held a prohibited financial interest or otherwise violated those provisions. Instead, he challenges the compensation structure of a third-party contractor. As such, this claim also fails as a matter of law.

Last, the Court turns to Mr. Whitaker's allegations that the contingent fee contract provision violates the requirements of certain federal grant programs the City participates in. The Court accepts as true Mr. Whitaker's allegation that a contingent-fee term could jeopardize the City's continued access to certain federal grants, but he identifies no legal mechanism that would make the contract void ab initio or impose a ministerial duty enforceable by mandamus. In addition, there is no legal support for Mr. Whitaker's assertion that such a provision falls outside the City's lawful authority or discretion. To make such a claim, Mr. Whitaker would have to allege that the City gave away its legislative or police power. See 10A McQuillin Mun. Corp. § 29:110 (3d ed.) ("Contracts which a municipal corporation is not permitted legally to enter into are not subject to ratification, and a city may not be estopped to deny the invalidity of a contract that is ultra vires in the sense that it is not within the power of the municipality to make. In other words, no ratification or estoppel can make lawful a municipal contract which is beyond the scope of the corporate powers, or which is not executed in compliance with mandatory conditions prescribed in the charter or statutes." (footnotes omitted)); *Vermont Dep't of Pub. Serv. v. Massachusetts Mun. Wholesale Elec. Co.*, 151 Vt. 73, 81 (1988) ("Therefore, if a public corporation enters into a contract that barters away or otherwise restricts the exercise of its legislative or police powers, then the contract is ultra vires and void ab initio.").

He does not make such an allegation. And the allegations he does make do not fall into the elements of a mandamus claim because the negotiation and agreement to this contract was not a ministerial act – it most certainly involved "the exercise of the official[s'] judgment or discretion." *Petition of Fairchild*, 159 Vt. 125, 130 (1992). In effect, Mr. Whitaker alleges that the City made an unwise decision that may prove to be a tactical mistake as to federal funding.

The answer to those matters is the political process, not voiding otherwise valid contracts with third parties.

In short, as to all of Mr. Whitaker's claims related to the contract, they do not allege a "clear and certain right" to the relief he requests or that the City's actions were merely a "ministerial duty" to support this mandamus claim. The Court dismisses Count 3.

6.      *Analysis of Count 4*

Under this claim, Mr. Whitaker cites various perceived requirements of 10 V.S.A. ch. 159 and DEC's "I-Rule" and seeks to enforce them himself. He identifies no statute or rule giving him, a private citizen, any cause of action to do so. Generally, action to enforce Chapter 159 is taken by the Secretary of the Agency of Natural Resources pursuant to 10 V.S.A. § 6610a (enforcement). The statute gives the Secretary enforcement authority and leaves substantial discretion over whether to act and how to proceed. The statute states the Secretary "may take such action as the Secretary determines to be necessary." 10 V.S.A. § 6610a(a). This statute does not give a cause of action to any private person to exercise the discretion and authority to which it speaks, and there is no other "citizen suit" provision that has been identified. *See Corbin v. Buchanan*, 163 Vt. 141, 144 (1994) ("[W]e note the absence in Vermont of any general inference of a private action based on government regulations whose clear purpose is the general welfare.").

The enforcement powers described by § 6610a are highly discretionary both as to whether to exercise them and how, and neither matter is ministerial in the slightest. As a result, there is no private cause of action under Chapter 159 generally. Nor is there any right to mandamus relief. The Court dismisses Count 4.

7.      *Analysis of Count 5*

Count 5 is a list of items of relief sought by Mr. Whitaker. It is not an independent legal claim. Because Counts 3 and 4 are properly dismissed, any relief sought in this case that relates exclusively to those Counts, whether appearing in Count 5 or the prayer for relief, is similarly subject to dismissal.

ORDER

For the foregoing reasons, Defendants' motion to dismiss is granted to the following effect:

(a) Mr. McCullough is dismissed as a party from this case;
(b) Counts 3 and 4 are dismissed; and
(c) any relief sought relating exclusively to Counts 3 and 4 is dismissed.
(d) The OML and PRA claims of Counts 1 and 2 are the only remaining claims in this case.

Electronically signed on February 20, 2026, pursuant to V.R.E.F. 9(d).

Navah C. Spero
Superior Court Judge

7